JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-04794 RGK (AJWx) | Date | October 16, 2009 |
|---|---|---|---|
| Title | *JACK GRAHAM V. AMERICAN GOLF CORPORATION, et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**     **(IN CHAMBERS)** Order Re Motions to Dismiss for Failure to State a Claim (DE 7, 19, & 22)

## I.     INTRODUCTION AND FACTUAL BACKGROUND

On July 2, 2009, Jack Graham ("Plaintiff") filed an action against the City of Long Beach ("City"), Los Angeles County ("County"), American Golf Corporation ("AGC"), National Golf Operating Partnership, L.P., Goldman Sachs Group, Inc., and Starwood Capital Group (collectively, Defendants).[1] Plaintiff is a self-employed golf instructor. He wishes to teach golf to his students at five municipal golf courses, including driving ranges and putting and chipping greens (collectively, "public golf courses"). The City owns four of the courses and the County owns one. The City and the County have contracted with Defendant AGC, a private management company, for the management of the five public golf courses.

Plaintiff appears pro se and is challenging an AGC policy that prohibits all non-AGC employees from teaching golf for money at any of the public golf courses. Plaintiff alleges that the City and the County condone AGC's policy ("Defendants' policy"). He further alleges that Defendants' policy violates the First Amendment (Free Speech, Free Assembly, and Free Association), the Fourteenth Amendment (Equal Protection), the Sherman Act, and various state laws.

Before the Court are Defendants' three separate Motions to Dismiss for failure to state a claim, which the Court consolidates for the purpose of this ruling. For the reasons stated below, the Court **GRANTS** Defendants' Motions to Dismiss for failure to state a claim as to the federal law claims under the First Amendment, the Fourteenth Amendment, and the Sherman Act. The Court also declines to exercise supplemental subject matter jurisdiction over Plaintiff's state law claims and hereby dismisses

---

[1] Plaintiff also named numerous City and County officials as defendants but he did not serve them with summons.

those claims against all Defendants.

## II.    JUDICIAL STANDARD

A party may move to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must assume allegations in the challenged complaint are true, and construe the complaint in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996). The court may not dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Russell v. Landrieu,* 621 F.2d 1037 (9th Cir. 1980). However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981). Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir. 2008).

## III.    DISCUSSION

### A.    The Court Dismisses Plaintiff's Free Speech Claim

#### 1.    The Court Assumes That Freedom of Speech Is at Stake

Plaintiff alleges that Defendants' policy violates his Free Speech rights under the First Amendment. Yet, Plaintiff does not clearly articulate how his golf instruction constitutes speech or provide case law to support that position. Plaintiff's Complaint focuses on how Defendants' policy limits his business opportunities as a golf instructor, not as a "speaker." Nevertheless, because Plaintiff appears pro se and because the case is only at a Motion to Dismiss stage, the Court assumes that teaching golf is "speech," and that the government has limited Plaintiff's ability to freely exercise that speech.[2] *See Cuesnongle v. Ramos,* 713 F.2d 881, 884 (1st Cir. 1983) ("Teaching is speech."); *see also Estelle v. Gamble,* 429 U.S. 97, 106 (1976)("[A] pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'") (quoting *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972)).

#### 2.    The Five Municipal Public Golf Courses Are Non-Public Fora

The Supreme Court has prescribed a two-step inquiry for determining whether government restrictions of speech on government-owned property are constitutional. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 74 (1983). Under this approach, courts first determine whether the property at issue is a "traditional public," "designated public," or "nonpublic" forum. *Id.* at 45-46. Second, courts apply the level of scrutiny that corresponds to the specific type of forum to determine the constitutionality of the restriction on speech. Here, despite Plaintiff's allegation that the public golf courses are either "traditional" or "designated" public fora, the court finds that they are "nonpublic" fora.

---

[2] The parties dispute whether AGC's policy of excluding non-employees from teaching golf at the public golf courses constitutes state action. As stated above, however, the Court assumes that AGC's policy may be attributed to the City and the County and amounts to state action for the purpose of this ruling.

### i.    *Traditional Public Forum*

"A traditional public forum is property that has as 'a principal purpose . . . the free exchange of ideas.'" *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679 (1992) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985)). Traditional public fora include sidewalks, streets, and parks, which "'have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Perry*, 460 U.S. at 45 (quoting *Hague v. CIO*, 307 U.S. 496, 515 (1939)).

Here, the public golf courses are not traditional public fora. The free exchange of ideas is not the primary use of public golf courses; nor have public golf courses by tradition been centers for communicative activities. Indeed, as centers of commercial operations, public golf courses are incompatible with many of the expressive activities (e.g., protests, rallies, speeches, and leafleting) allowed in other traditional public fora.

Plaintiff points to the City's and the County's municipal codes, which classify the public golf courses under the broad category of "parks," as evidence that the public golf courses are traditional public fora. But governmental definitions and classifications are not the relevant consideration for determining the applicable forum. *See United States v. Grace*, 461 U.S. 171, 180 (1983). Although public golf courses generally bear physical similarities with public parks, the majority of each public golf course is restricted to paying customers only. Their boundaries are delineated and marked, and they do not serve as public thoroughfares. *See ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1100-02 (9th Cir. 2003) (stating that proper delineation and restricted access are factors weighing strongly against traditional public forum status). Therefore, the Court finds that the public golf courses are not traditional public fora.

### ii.    *Designated Public Forum*

The inquiry here is whether opening up the five public golf courses to one group (AGC employees) on one topic (golf instruction) is sufficient to turn the public golf courses into dedicated public fora. The Court finds that it is not. A designated public forum is one in which the government has intentionally opened a nontraditional public forum for a broad range of expressive activities. *Ark. Educ. Tv. Comm'n v. Forbes*, 523 U.S. 666, 677 (1998). In *Perry*, the court held that by opening up schoolteachers' mailboxes to only one union group, in exclusion of competing unions, the government did not turn the mailboxes into a designated public forum. 460 U.S. at 47.  The Court distinguished granting limited access to limited groups from opening the forum to the public for a broad range of expressive activities. *Perry*, 460 U.S. at 47. For the government to create a designated public forum, the forum must be "open for use by the general public." *Id. See also M.N.C. of Hinesville, Inc. v. United States Dep't of Def.*,791 F.2d 1466, 1474 (11th Cir. 1986)(holding that by granting to only one newspaper publisher the exclusive rights to access military distribution channels, the government did not create a designated public forum). Here, similar to *Perry*, teaching golf for money is only open to a limited group (AGC employees). Therefore, the City and the County have not created a designated public forum for teaching golf by allowing the AGC employees to exclusively teach golf on the five municipal golf courses.

  *iii.  Nonpublic Forum*

  Nonpublic forum status is assigned to "all government-owned property not traditionally or explicitly designated as a public forum."[3] *Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation*, 322 F.3d 1298,1306 n.9 (11th Cir. 2003). As the public golf courses do not fit within the confines of either the traditional or the designated public forum, the court finds that the public golf courses are nonpublic fora.[4]

  *3.  <u>The Restriction at Issue Is Reasonable and Viewpoint Neutral</u>*

  In a nonpublic forum, the government may restrict speech so long as the restriction is reasonable and viewpoint neutral.[5] *Board of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 573 (1987).

  *i.  Reasonableness*

  "The 'reasonableness' analysis focuses on whether the limitation on speech is consistent with preserving the property for the purpose to which it is dedicated." *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 967 (9th Cir. 1999). The restriction "'need only be reasonable; it need not be the most reasonable or the only reasonable limitation.'" *United States v. Kokinda*, 497 U.S. 720, 730 (1990) (plurality opinion) (quoting *Cornelius*, 473 U.S. at 808).

  In *M.N.C. of Hinesville, Inc.*, the court deemed reasonable a policy that granted only one

---

  [3]The Ninth Circuit also recognizes a fourth category, the "limited public" forum. *Truth v. Kent Sch. Dist.*, 551 F.3d 850, 852 (9th Cir. 2008). Because the accompanying scrutiny level for limited public fora is the same as that applicable to nonpublic fora, the court need not distinguish the two here. *Id.*

  [4] Apart from being the default choice, the non-public status of the public golf courses can also be established in light of precedent. In *Kokinda*, the question before the Supreme Court was whether a sidewalk surrounding a U.S. post office was a traditional public or nonpublic forum. The court held that while sidewalks have historically been viewed as "traditional public fora," the post office sidewalk was nonpublic because its purpose was to serve the government's commercial operation. *United States v. Kokinda*, 497 U.S. 720, 725 (1990) (plurality opinion) (citing *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 896 (1961)). Other courts have followed this reasoning in finding that fora that serve the government's commercial operations are nonpublic. *See Children of the Rosary v. City of Phoenix*, 154 F.3d 972, 978 (9th Cir. 1998) (advertising space on the outside of city buses); *Lee*, 505 U.S. at 685 (airport terminals); *Greer v. Spock*, 424 U.S. 828, 838 (1976) (military stores); and *Int'l Soc'y for Krishna Consciousness, Inc. v. N.J. Sports & Exposition Auth.*, 691 F.2d 155, 161 (3d Cir. 1982) (municipal sports complexes). Here, Plaintiff seeks to offer instructional services in three distinct areas of the public golf courses—the golf courses themselves, the driving ranges, and the practice greens. All three areas directly serve and are connected to the City's and the County's commercial operation. Thus, the Public golf courses are nonpublic fora.

  [5] Before the Supreme Court assigned different scrutiny levels to each type of forum, the Court stated that it was a "long-settled principle that government actions are subject to a lower level of First Amendment scrutiny when 'the governmental function operating . . . [is] not the power to regulate or license, as lawmaker, . . . but, rather, as proprietor, to manage [its] internal operation[s].'" *Kokinda*, 497 U.S. at 730 (quoting *Cafeteria & Restaurant Workers*, 367 U.S. at 896). Here, the City and the County are, through their contracted agent, acting as proprietors of commercial operations. Thus, even if forum analysis was not applicable in this case, Defendants' policy would be entitled to rational basis review.

contracted newspaper publisher the exclusive rights to distribute its paper via military channels. 791 F.2d at 1476-77. Although the policy excluded non-contracted publishers from the forum, the court held that the policy was reasonable because it created a financially enticing contract that might attract more bids in the future from competing publishers. *Id.* at 1477. *See also Lehman v. City of Shaker Heights*, 418 U.S. 298, 304 (1974) (finding a restriction on speech reasonable when allowing speech might have jeopardized the government's long-term revenues).

Similarly, the Third Circuit held that a policy that barred parties from distributing literature and soliciting donations at a municipal sports complex was reasonable. *Int'l Soc'y for Krishna Consciousness, Inc. v. N.J. Sports & Exposition Auth.*, 691 F.2d 155, 162 (3d Cir. 1982). The policy ensured that the government's operating income was not diverted to those soliciting funds, that irritating solicitors did not cause people to attend competing facilities, and that the ordinary operation and order of the facility was not affected. *Id.* at 161-62.

Here, Defendants' policy is reasonable because it allows AGC to maintain the safe and professional atmosphere of the public golf courses and coordinate multiple uses of limited space. These in turn allow Defendants to attract and retain customers for the public golf courses. Additionally, Defendants' policy provides a financial incentive to AGC, which helps retain AGC's services and ensure a constant supply of companies willing to manage the public golf courses. Finally, the policy limits the government's financial liability associated with having independent golf instructors teach lessons on public property.[6] Any one of these justifications would warrant the finding that Defendants' policy is reasonable.

### ii.    *Viewpoint Neutral*

"Viewpoint discrimination occurs when the government 'denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject.'" *Flint v. Dennison*, 488 F.3d 816, 833 (9th Cir. 2007) (quoting *Cornelius*, 473 U.S. at 806). Plaintiff's Complaint does not allege that the restriction is due to Plaintiff's viewpoint on golf or even that other non-AGC employees are permitted to teach on the public golf courses while Plaintiff is not. The restriction is applied to Plaintiff because he is not an AGC employee and not because of his viewpoint on golf. Thus, Defendants' policy is viewpoint neutral.

As the public golf courses are nonpublic fora, and as Defendant's policy is reasonable and viewpoint neutral, the Court finds Defendants have not violated Plaintiff's Free Speech rights. Plaintiff's Complaint also vaguely alleges that Defendants' policy violates his rights of Free Assembly and Free Association. However, "the established elements of speech, assembly, association, and petition, 'though not identical, are inseparable.'" *NAACP v. Clairborne Hardware Co.*, 458 U.S. 886, 911 (1982) (quoting *Thomas v. Collins*, 323 U.S. 516, 530 (1945)). Thus, having found that Defendants' policy does not violate Plaintiff's Free Speech rights, the Court finds that Defendants' policy does not violate Plaintiff's closely related rights of Free Assembly and Free Association. Therefore, the Court grants Defendants' Motions to Dismiss Plaintiff's claim under the Free Speech clause of the First Amendment.

### B.    The Court Dismisses Plaintiff's Equal Protection Claim

Plaintiff alleges that Defendants' policy violates his Equal Protection rights. Defendants' policy will receive strict scrutiny review only if Plaintiff alleges that he is a member of a suspect class or if the

---

[6]Plaintiff's request is equivalent to a private educational tutor suggesting that he must be allowed to operate his business in the classrooms of public universities. The Constitution does not require the government to concede to such demands.

policy violates his fundamental rights. *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not contend that he is a member of a suspect class. Plaintiff also fails to establish that Defendants' policy violates his fundamental rights.

Plaintiff alleges that Defendants' policy violates his fundamental rights of Free Speech, Free Assembly, and Free Association. The Court has already rejected these arguments. Plaintiff also relies on *Truax v. Raich*, 239 U.S. 33, 41 (1915), and argues that he has a fundamental right to work in a "common occupation of the community." *Id.* ("The right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the Fourteenth Amendment to secure."). But the Ninth Circuit has previously rejected a similar argument, holding that "the right to pursue a calling is not a fundamental right for purposes of the Equal Protection Clause." *Madarang v. Bermudes*, 889 F.2d 251, 253 (9th Cir. 1989) (overturning a district court's ruling that relied on *Truax v. Raich* to find that the right to work in a common occupation of the community was a fundamental right that triggered strict scrutiny review). Thus, Defendants' policy does not violate a fundamental right.

Defendants' policy is therefore subject to rational basis review. *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). For reasons cited above, *See Supra* part III.A.3.i, the Court finds that Defendants have a rational basis for their policy. As a result, the Court grants Defendants' Motions to Dismiss Plaintiff's claim under the Equal Protection clause of the Fourteenth Amendment.

## C.    The Court Dismisses Plaintiff's Claim Under the Sherman Antitrust Act

For the Sherman Act to apply, Plaintiff must allege that the acts complained of either (1) affect the interstate portion of Plaintiff's business or (2) "occurred wholly on the state or local level . . . but substantially affected interstate commerce." *Thornhill Pub. Co. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 737 (9th Cir. 1979) (internal citation omitted); *see also Page v. Work*, 290 F.2d 323, 330 (9th Cir. 1961).

Plaintiff's assertions regarding the effect of his business on interstate commerce are without merit. He states that he teaches an unspecified number of out-of-state golfers and that he helps some of his students buy golf equipment that has crossed interstate lines. He further suggests that his students' spending money at the golf course pro shops and restaurants, and using the bank systems to pay for Plaintiff's services have a substantial effect on interstate commerce. But these assertions only give rise to a de minimis effect on interstate commerce at best. *See Page*, 290 F.2d at 332 ("In order for federal antitrust jurisdiction to be sustained, the effect on interstate commerce of an alleged antitrust violation in a local area must be direct and substantial and not merely inconsequential, remote or fortuitous."). Thus, the Court grants Defendants' Motions to Dismiss Plaintiff's claim under the Sherman Act.

## IV.    <u>CONCLUSION</u>

In light of the foregoing, the Court **GRANTS** Defendants' Motions to Dismiss for failure to state a claim as to the federal law claims under the First Amendment, the Fourteenth Amendment, and the Sherman Act. The Court also declines to exercise supplemental subject matter jurisdiction over Plaintiff's state law claims and hereby dismisses those claims against all Defendants.

**IT IS SO ORDERED.**

Initials of Preparer     slw